IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LISA SACK, | ) | CASE NO. 1:25-cv-01641-SO |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## I.      Introduction

Plaintiff Lisa Sack ("Sack") seeks judicial review of the final decision of the

Commissioner of Social Security, denying her application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C.

§§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ")

failed to apply proper legal standards, I recommend that the Commissioner's final decision

denying Sack's DIB be vacated and remanded for further consideration.

## II.      Procedural History

Sack protectively filed for filed for DIB on October 24, 2022, alleging a disability onset

date of January 14, 2022. (Tr. 158). The claims were denied initially and on reconsideration. (Tr.

87, 88). Sack then requested a hearing before an ALJ. (Tr. 107-08). Sack, represented by

counsel, and a Vocational Expert ("VE") testified before an ALJ on June 11, 2024. (Tr. 58-81).

On June 26, 2024, the ALJ issued a written decision finding Sack not disabled. (Tr. 7-18). The

Appeals Council denied her request for review on June 9, 2025, making the hearing decision the

1

final decision of the Commissioner. (Tr. 1-6; see 20 C.F.R. §§ 404.955, 404.981). Sack timely filed this action on August 6, 2025. (ECF Doc. 1).

### III. Evidence

#### A. Personal, Educational, and Vocational Evidence

Sack was born October 29, 1965. (Tr. 158). She was 56 years old on her alleged onset date, making her an individual of advanced age according to agency regulations. (Tr. 82). She has at least a high school education. (Tr. 64). She has past relevant work as a production scheduler, DOT #221.167-018, sedentary exertional level with an SVP of 6, and as a database administrator, DOT #039.162-10, sedentary exertional level with an SVP of 8. (Tr. 79).

#### B. Relevant Medical Evidence

On January 18, 2022, Sack attended an office appointment with Laxmen Cingireddi, M.D., regarding anxiety and depression. (Tr. 403). Sack complained of feeling anxious, depressed and stressed, and reported difficulty sleeping, lack of interest, feeling guilty for no reason, decreased energy, abnormal mood, irritability and difficulty with concentration and appetite. (*Id.*). Dr. Cingireddi counseled her and prescribed her medications. (*Id.).* Dr. Cingireddi further assessed her with diabetes mellitus, type II; polyarthralgia/myalgia; pernicious anemia; and fatigue, and provided Sack with an off-work order. (*Id.*). At a follow-up appointment on February 3, 2022, Dr. Cingireddi increased Sack's Buspar prescription and recommended counseling. (Tr. 407). Sack indicated she did not wish to see a psychiatrist. (*Id.*). Dr. Cingireddi provided her with a return-to-work note for March 14, 2022. (*Id.*).

On March 9, 2022, Sack reported she was feeling depressed and anxious "all the time," and that she was "stressed and overwhelmed." (Tr. 410). Dr. Cingireddi recommened the return-

to-work date be tentatively extended until April 18, 2022 because Sack was concerned that her depression and anxiety were limiting her ability to focus. (*Id.*).

On April 28, 2022, Sack underwent a diagnostic assessment by Elaine Marlowe, Ph.D. (Tr. 315). The assessment listed presenting problems, including that Sack was depressed, anxious/nervous and that she was experiencing panic attacks. (*Id.*). She also was reporting adjustment issues relating to cultural changes in her work place and noted that she was on temporary disability. (Tr. 316). The assessment notes that Sack appeared preoccupied, that her facial expressions indicated tension, anxiety and sadness, that her mood was depressed, that her decision making appeared to be "confused", and that she seemed exhausted. (Tr. 318-19). Dr. Marlowe assessed Sack with generalized anxiety disorder, panic disorder, major depressive disorder – moderate and bereavement. (Tr. 322-23). Dr. Marlowe recommended weekly outpatient psychotherapy. (Tr. 321).

On May 23, 2022, Dr. Marlowe prepared a treatment summary following three psychotherapy sessions. (Tr. 365-66). Dr. Marlowe wrote that Sack's anxiety had grown uncontrollable as of January, 2022, which she attributed to her work environment, and as a result she had not worked since January 13, 2022. (Tr. 365). Sack had decided to resign her position on May 5, 2022, which had led to considerable lifting of her depression. (*Id.*) In a subsequent treatment summary written October 1, 2022, Dr. Marlowe noted that Sack's panic symptoms had decreased significantly, although the symptoms still appeared on an almost daily basis. (Tr. 367). Sack was still experiencing some symptoms of depression, including worthlessness, sadness and grieving. (*Id.*). Sack participated in psychotherapy routinely until January, 2023, at which time she discontinued her treatment due to the loss of long term disability benefits that had provided her the financial means to do so. (Tr. 361).

On June 24, 2022, Sack treated with Thomas D. DiSalvatore, DC, to address segmental and somatic dysfunction of her cervical region. (Tr. 252). Sack alleged neck stress that was causing headaches, lower back pain, numbness in her left arm and pain in her left bicep. (*Id.*). She continued her chiropractic treatment through July 7, 2022. (Tr. 264). At an October 28, 2022 office visit, Dr. Cingireddi noted that Sack's anxiety and depression were contributing to here joint pain and muscle aches. (Tr. 397). He prescribed Cymbalta. (*Id.*).

On March 31, 2023, Sack established care with Geore Baker, NP, who primarily treated her for her diabetes mellitus, while continuing her Cymbalta prescription. (Tr. 774). By May 26, 2023, her A1c had dropped from 9.8% to 9.0 %. (Tr. 767). By March 1, 2024, her A1c was down to 7.2%. (Tr. 733).

### C.        Medical Opinion Evidence

#### 1.        State Agency Reviewing Opinion Evidence

On July 25, 2023, state agency reviewing physician Gary Hinzman, M.D., found that there was insufficient evidence to form an opinion. (Tr. 86). State agency reviewing physician Lynne Torello, M.D., concurred with Dr. Hinzman on November 29, 2023. (Tr. 92).

On August 8, 2023, state agency reviewing psychologist Kristen Haskins, Psy.D., found there was insufficient evidence to render an opinion. (Tr. 84-85). State agency reviewing psychologist Carl Tishler, Ph.D, concurred with Dr. haskins on December 5, 2023. (Tr. 91).

#### 2.        Clinical Review for Long Term Disability

On June 14, 2022, Donna Klimowicz, M.D., wrote a Clinical Review Memo on behalf of Lincoln Financial, the provider of Sack's long term disability benefits. (Tr. 615-18). Dr. Klimowicz offered primary impairing diagnoses of generalized anxiety disorder; panic disorder; major depressive disorder, recurrent, moderate; and bereavement, with co-morbidities including

subclinical hypothyroidism; vitamin D deficiency; diabetes mellitus, type II; dyslipidemia, chronic fatigue; and vitamin B12 deificiency. (Tr. 615). Dr. Klimowicz opined that the presence of significant psychiatric impairment would preclude occupational functioning and create a medical necessity of restricting Sack from all activities requiring maintaining focus, concentration, pace, persistence and complex decision making capacity necessary for performing a typical eight hour workday at her high level occupation through August 30, 2022. (*Id.*).

On January 4, 2023, Steven Choi, D.O. wrote a new Clinical Review of Sack's case for Lincoln Financial. (Tr. 436-41). Dr. Choi opined there were no supported psychiatric restrictions and limitations for the time period of the present and onward. (Tr. 440).

### D.  Administrative Hearing Evidence

Sack testified before an ALJ on June 11, 2024. (Tr. 63-78). Sack testified that she is 58 years old, and that she has a Bachelor's Degree in accounting. (Tr. 64). She is currently unemployed, and she last worked on January 14, 2022. (Tr. 65). Sack explained that she left her last job primarily because of her health situation that requires her to take medication that leaves her exhausted and requires her to nap or rest for two to three hours at a time. (Tr. 70). She also experiences brain fog. (*Id.*). She sleeps poorly at night due to pain and her inability to shut her mind down due to depression or anxiety. (Tr. 70-71). She is afraid to travel by herself because she is "always in a fog." (Tr. 71). She typically only leaves home for doctor's appointments or grocery shopping. (*Id.*).

Sack further testified that she would enter severe depression states when all she would want to do was lay around and sleep, when her muscles would ache and she would experience headaches. (Tr. 72). She also experiences anxiety when she would feel tightness in her chest, have panic attacks and "just start shaking and quivering." (*Id.*). She does stretching exercises and

5

pressure point therapy to relieve her symptoms, but neither completely resolves the problems. (*Id.*). Her sleeping patterns also impact the management of her diabetes, as it throws off her eating schedule. (*Id.*). She takes Cymbalta to manage her mental health conditions. (Tr. 73).

Sack stated that her daughter takes care of the majority of the household chores; Sack only occasionally does a load of laundry. (Tr. 73-74). Sack will prepare a dinner at least four days per week, and will load and unload the dishwasher. (Tr. 74). Sack tends to her hygiene, and will go with her husband or daughter to the grocery store. (*Id.*). Sack will also dustmop the floors, clean the bathrooms, and occasionally mow the lawn on a riding mower. (*Id.*). She typically lays down for three to four hours during the day, and will have days at least once or twice weekly when she will sleep all day. (*Id.*).

Under questioning by her attorney, Sack testified that her sleeping and depression have grown worse since January 2022, although her anxiety has been reduced since she stopped working. (Tr. 76). Her diabetes has also improved, as her A1c has dropped from 12% to 8.7%. (*Id.*). She has slept more since she began taking her medication. (*Id.*). Sack also believes her memory, focus, concentration and ability to complete tasks has diminished (Tr. 77).

Once Sack's testimony concluded, VE Menia Hakila testified. (Tr. 78-80). VE Hakila classified Sack's past work as a production scheduler, DOT #221.167-108, with a sedentary exertional level and an SVP of 6, and as a database administrator, DOT #039.162-010, with a sedentary exertional level and an SVP of 8. (Tr. 79). VE Hakila further testified that in her experience employers will typically tolerate 10% time off-task and up to one absence per month. (Tr. 79-80). The ALJ did not pose any hypotheticals to the VE.

IV.     **The ALJ's Decision**

In her decision dated June 26, 2024, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2027.

2.  The claimant has not engaged in substantial gainful activity since January 14, 2022, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has the following medical impairments: diabetes mellitus; depressive, bipolar and related disorders; and anxiety and obsessive-compulsive disorders (20 CFR 404.1521 *et seq*.).

4.  The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore the claimant does not have a severe impairment or combination of impairments (20 C.F.R. 404.1521*et seq.*).

5.  The claimant has not been under a disability, as defined in the Social Security Act, from January 14, 2022, through the date of this decision (20 CFR 404.1520(c)).

(Tr. 14-29).

## V.  Law and Analysis

### A.  Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1.  whether the claimant is engaged in substantial gainful activity;

2.  if not, whether the claimant has a severe impairment or combination of impairments;

3.  if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4.  if not, whether the claimant can perform their past relevant work in light of his RFC; and

5.  if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

7

20 C.F.R. § 404.1520(a)(4)(i)-(v)[1]; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B.      Standard of Review

This Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*, quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

---

[1] The regulations governing DIB claims are found in 20 C.F.R. § 404, *et seq.* and the regulations governing SSI claims are found in 20 C.F.R. § 416, *et seq.* Generally, these regulations are duplicates and establish the same analytical framework. For ease of analysis, I will cite only to the relevant regulations in 20 C.F.R. § 404, *et seq.* unless there is a relevant difference in the regulations.

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012).

## VI.    Discussion

Sack raises two issues for this Court's review:

> 1.    Whether the ALJ's determination is unsupported by substantial evidence as she improperly found that Sack's mental impairments are non-severe.
>
> 2.    Whether the ALJ's determination is unsupported by substantial evidence because she failed to properly consider Sack's subjective testimony.

(ECF Doc. 6, p.1). As the issues are related, I will consider them jointly.

### A.    The ALJ erred in determining that Sack's mental impairments are non-severe.

Sack argues that the ALJ erred in determining that Sack's mental impairments were non-severe, as the ALJ incorrectly found that Sack's "medically determinable mental impairments cause not more than mild limitation in any of the functional areas and the evidence does not

9

otherwise indicate that there is more than a minimal limitation in [Sack's] ability to do basic work activities." (*Id*. at p. 12; Tr. 16). Sack contends that her mental impairments caused substantially more than a "minimal limitation" in her ability to perform basic work activities, citing evidence from her medical provider Dr. Cingireddi's examination notes, as well as his "multiple off-work orders," as probative evidence demonstrating more significant restrictions brought about by her mental health conditions. (ECF Doc. 6, pp. 12-13). Sack adds that the ALJ failed to consider the clinical review memo submitted by independent medical reviewer Dr. Klimowicz that "supports the presence of significant psychiatric impairment that would preclude occupational functioning and the medical necessity of restricting Ms. Sack from all activities that require maintaining the focus, concentration, pace, persistence and complex decision-making capacity necessary for performing a typical 8-hour day at Ms. Sack's high level occupation." (*Id.* at pp. 13-14; Tr. 615). Sack avers that the ALJ erroneously relied on a "selective reading of the record" to support her conclusion, and thereby failed to build a logical bridge from the evidence to her finding that Sack did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months.

The Commissioner responds that the Sack bears the burden of proving at Step Two of the sequential analysis that she a medically determinable impairment that significantly limits her physical and mental ability to do basic work activities, and a diagnosis alone is not sufficient to satisfy that burden. (ECF Doc. 7, p. 6). The Commissioner argues that Dr. Cingireddi's "off-work orders" were statements on issues reserved to the Commissioner, and therefore neither valuable nor persuasive. (*Id.* at p.7). Similarly, the Commissioner contends that Dr. Klimowicz did not suggest any specific limitations for Sack, rather, she simply opined that her limitations

10

precluding her from performing her past work on a full-time basis. (*Id.* at p.8). In the Commissioner's view, this again invaded the province of the Commissioner, and was neither valuable nor persuasive. (*Id.*).

At the second step of the sequential analysis, the ALJ considers whether the claimant has a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii), (c). An impairment qualifies as a "severe impairment" only if it is "expected to result in death [or has] lasted or is expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). The Sixth Circuit has applied a de minimis standard to the Step Two inquiry, meaning that the ALJ must find that a claimant's medically determinable impairment is severe, so long as it has more than a minimal effect and would be expected to interfere with the individual's ability to work. *See Salmi v. Sec'y of Health & Human Servs.*, 744 F.2d 685, 691 (6th Cir. 1985) ("An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." (internal quotation and marks omitted)). If the ALJ determines that the claimant does not have a severe impairment, or combination of impairments, the regulations direct the ALJ to find that the claimant is not disabled. 20 C.F.R. § 416.920(c). Step two is a threshold inquiry "intended to 'screen out totally groundless claims.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985

There is evidence in the record that appears to support the contention that Sack's impairments were not groundless under 20 C.F.R. §404.1521, because the record provides evidence that the impairments interfered with her basic work activities. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs" such as "(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2)

11

capacities for seeing, hearing and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521. Drs. Cingireddi, Marlowe and Klimowicz each noted issues arising from her mental health impairments affecting her ability to focus and concentrate, and to respond appropriately to stress associated with a competitive work environment, thus implicating the third, fourth, fifth and sixth basic work activities delineated above.

The question for this Court's consideration thus becomes whether there is substantial evidence to support the opposite conclusion – that Sack's impairments are so slight that they have little, if any, impact on her work capacity. *See Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed.App'x. 771, 774 (6th Cir. 2008). If substantial evidence supports the ALJ's decision, "this Court will defer to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.*, citing *Longworth v. Comm'r of Soc Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). "Substantial evidence means more than a scintilla of evidence. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Mowery v. Heckler,* 771 F.2d 966, 970 (6th Cir.1985) (internal quotation and marks omitted).

A thorough review makes clear that, even when extending appropriate deference to the ALJ's decision, the denial of relief at step two was in error. In reaching her conclusion, the ALJ acknowledges that Sack testified to, and examination notes report of, depression and anxiety symptoms (Tr. 16, referencing Tr. 485; Hearing Testimony), as well as difficulty with concentration. (Tr. 16, referencing Tr. 617; Hearing Testimony). The ALJ further notes that Sack's "mood, insight and concentration were at times remarkable," (Tr. 16, referencing Tr. 487,

492, 617, 664, 667) although the full record also contains "generally unremarkable mental status examinations." (Tr. 16, referencing Tr. 487, 491, 711, 734-35, 742-43, 753, 758, 767, 773-74). The ALJ noted that Sack reported feeling better after certain counseling session (Tr. 16, referencing Tr. 514, 518). In addition to what is referenced in the ALJ's decision, there are examination notes indicating she is depressed and that her decision making appears "confused" and her coping ability "exhausted" (Tr. 318-19). Dr. Marlowe also noted on May 23, 2022 that Sack had daily anxiety sympoms, and that she was depressed. (Tr. 367). These notations to the record make clear that there are symptoms with varying degrees of functional implication that appear in the treating sources examination notes. That there were some office visits where examination notes indicated benign findings does not erase the limitations suggested by the notes from visits indicating more significant concerns.

Sack further points out that the ALJ did not evaluate what she refers to as medical opinion evidence that was rendered by Drs. Cingireddi and Klimowicz. (ECF Doc. 6, pp. 12-15). The Commissioner argues no such evaluations were required, as the statements of these physicians were not opinions, but rather statements on issues reserved to the Commissioner that therefore are inherently neither valuable nor persuasive. (ECF Doc. 7, p.7). And, with regard to the return-to-work orders issued by Dr. Cingireddi, the Commissioner has the better of the argument, as the implication of a return-to-work order is that the subject is currently unable to work. This determination is an an issue clearly reserved to the Commissioner pursuant to 20 C.F.R. § 404.1520b(c)(3), and therefore the ALJ is not required to analyze this evidence. *See id* (the Agency "will not provide any analysis about how [it] considered such evidence [that is inherently neither valuable nor persuasive]" in its determination); *see also William S. v. Comm'r of Soc. Sec.* No. 2:22-cv-03848, 2024 WL 957745, at *7 (S.D. Ohio Mar. 6, 2024).

The failure to evaluate the medical opinion of Dr. Klimowicz, however, cannot so easily be excused. Dr. Klimowicz very specifically indicated that Sack lacked the capacity to perform activities requiring focus, concentration, pace and complex-decision making capacity necessary for a "high-level" occupation such as her most recent job. (Tr. 615). These are restrictions, described in vocational terms, specifying what functional limitations would be barriers to employment, as opposed to a blanket determination of disability that would clearly be reserved to the Commmissioner. *See* 20 C.F.R. § 404.1520b(c)(3). Further, it is stated in the context of an inability to perform her past work, as opposed to suggesting a finding that she was incapable of all work or was an appropriate candidate for disability. The ALJ thus did not follow agency regulations by failing to consider Dr. Klimowicz's medical opinion and not providing a meaningful explanation as to why it should be disregarded.

A full review of the record, including a complete review of treating source examination notes and a proper evaluation of Dr. Klimowicz's opinion, dispels the notion that Sack had no medically determinable impairments that could be expected to limit her ability to perform basic work-related activities. Indeed, the ALJ's decision supports the opposite conclusion (*see* Tr. 16). For similar reasons that it was error for the ALJ to end their review at Step Two, so again is it error for the ALJ to not continue their review through the remaining steps of the sequential evaluation, including a full consideration of Dr. Klimowicz's medical opinion. *See Bowen*, 478 F.3d at 746.

Accordingly, I recommend remand.

14

**VII.    Recommendation**

Because the ALJ failed to apply proper legal standards when finding that Sack had no severe medically determinable impairments at Step Two of the sequential evaluation, I recommend the Commissioner's final decision denying Sack's application for DIB be remanded.

Dated: April 6, 2026

Reuben J. Sheperd
United States Magistrate Judge

---

**OBJECTIONS**

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\*\*\*

Failure to file objection within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendations. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be

15

specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act." *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, 2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interests of justice. *See United States v. Wandashega,* 924 F.3d 868, 878-79 (6th Cir. 2019)